NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JOHN BRANDT,

       Plaintiff,

  v.

JANET MONROE, et al.

       Defendants.

CIVIL ACTION NO. 05-3386 (DRD)

OPINION

Appearances

JOHN BRANDT
Ancora Psychiatric Hospital
301 Spring Garden Road
Ancora, New Jersey 08037-9699
    *Plaintiff, pro se*

ESTER E. BOKONYI
Deputy Attorney General
State of New Jersey Office of the Attorney General
25 Market Street
PO Box 116
Trenton, New Jersey 08625-0112
    *Attorney for Defendants Janet Monroe and Dr. Jeffrey Nurenburg*

## *OPINION*

**DEBEVOISE, Senior District Judge**

    This action is brought pursuant to the 14th Amendment and 42 U.S.C. § 1983. Plaintiff, a psychiatric patient, was found not guilty of a criminal charge by reason of insanity, and involuntarily committed to the Greystone Psychiatric Hospital ("Greystone") pursuant to

N.J.S.A. 2C:4-8b(3) and State v. Krol, 68 N.J. 236 (1975).  Defendants are Janet Monroe ("Monroe"), Greystone's Chief Executive Officer, and Dr. Jeffrey Nurenburg ("Nurenburg"), Greystone's Medical Director and Chief Psychiatrist.

Defendants have moved the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Defendants argue that Plaintiff has failed to demonstrate that a clearly established constitutional right was violated, and that as employees of the State, they are not "persons" subject to liability within the meaning of 42 U.S.C. § 1983.  For the reasons set forth below Defendants' motion is granted.

## FACTS AS ALLEGED IN THE COMPLAINT

Plaintiff was found not guilty by reason of insanity in a prior criminal proceeding.  Following the verdict, he was involuntarily civilly committed to Greystone pursuant to N.J.S.A. 2C:4-8b(3) and State v. Krol, 68 N.J. 236 (1975).  On March 24, 2005 Plaintiff was involved in an altercation with a Greystone staff member.  See Brandt v. Aunach et al., No. 05-2070, Slip Op. 1-3 (D.N.J. Nov. 10, 2005).  The following day, Plaintiff was transferred to Ann Klein, a more restrictive hospital.  Plaintiff was evaluated sometime after his transfer to Ann Klein, wherein his treatment team determined that Plaintiff did not require this more restrictive setting.  On April 18, 2005, Plaintiff's treatment team ordered his transfer back to Greystone.

On July 1, 2005 Plaintiff had yet to be transferred back to Greystone.  On July 6, 2005, he filed the complaint in the instant case.  In his complaint, Plaintiff alleges that he remains committed at Ann Klein in violation of his right to due process because he is committed to a more restrictive setting than that required for treatment.  Plaintiff claims that Monroe has

2

improperly refused to transfer him back to Greystone, and has deliberately bypassed him on the waiting list by transferring other Ann Klein patients to Greystone in front of him.  Plaintiff also alleges that Nurenburg oversees transfers to and from Greystone and has deliberately delayed Plaintiff's transfer back to Greystone as a form of punishment.  Plaintiff claims Nurenberg delayed the transfer because he has been listed as a defendant in a separate complaint filed by Plaintiff against members of the Greystone staff.  See <u>Brandt v. Aunach et al.</u>, No. 05-2070.  Plaintiff's complaint alleges that Defendants' unreasonable delays in effectuating the transfer infringed upon his right to due process.

There are matters of public record that the Court may consider in this motion.  On July 18, 2005, the New Jersey Superior Court, Law Division reviewed Plaintiff's <u>Krol</u> status and ordered that Plaintiff: (1) shall continue on <u>Krol</u> status; (2) shall continue to reside at Ann Klein until such time as his case can be reviewed by the Clinical Administrative Review Panel ("CARP"); (3) with the CARP's approval, may be transferred to a psychiatric hospital with a less restrictive setting; (4) **shall NOT, under any circumstances, be transferred to Greystone**; (5) shall cooperate with his treating psychiatrist and treatment team; (6) shall take his medications as prescribed; (7) may receive his medication intramuscularly if he refuses to take it orally; (8) may be placed in a more restrictive setting if his condition deteriorates; and (9) shall have a review hearing with his psychiatrist present on November 28, 2005.  Plaintiff was represented by an attorney at that hearing and did not appeal the Court's decision.

On September 29, 2005, Plaintiff informed the Court that he was transferred to the Ancora Psychiatric Hospital ("Ancora").  On April 26, 2006, Defendants filed this motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

**DISCUSSION**

A.     Standard for Dismissal - 12(b)(6)

Defendants argue that Plaintiff's complaint should be dismissed pursuant to Fed. R.Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Rule 12(b)(6) states in part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ...(6) failure to state a claim upon which relief can be granted...

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir.1992). Pursuant to Rule 12(b)(6), a complaint shall be dismissed for failure to state a claim upon which relief can be granted only if a court finds "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 46 (1957); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980); Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 634 (3d Cir. 1989).

Allegations contained in the complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and the plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). The court is limited to facts contained and alleged in the complaint and may not consider facts raised for the first time by parties in legal briefs. Hauptmann v. Wilentz, 570 F. Supp. 351, 364 (D.N.J.

1983), aff'd without opinion, 770 F.2d 1070 (3d Cir. 1985).  The Court will accept the alleged facts as true and view them in the light most favorable to the non-moving party.  <u>Doug Grant, Inc. v. Greate Bay Casino Corp.</u>, 232 F.3d 173, 183-84 (3d Cir. 2000).   The question the court must answer is not whether Plaintiff will prevail, but rather whether there are any circumstances that would entitle him to relief.  <u>Hishon v. Spalding</u>, 467 U.S. 69, 73 (1984).  To resolve a 12(b)(6) motion, a court may properly consider documents incorporated in the Complaint and public records, including judicial proceedings, in addition to the allegations in the complaint. <u>Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426 (3rd Cir. 1999) (citations omitted).

B.      Right to Least Restrictive Environment

N.J.S.A. 30:4-24.2(e)(2) provides that each patient committed to a mental institution has the right to be committed "to the least restrictive conditions necessary to achieve the purposes of the treatment."  Additionally, in <u>Youngberg v. Romero</u>, 457 U.S. 307 (1982), the Supreme Court recognized a substantive Fourteenth Amendment liberty interest in freedom from unnecessary restraints.  In <u>Scott v. Plante, et al.</u>, 691 F.691 F.2d 634 (1982), the Third Circuit Court of Appeals reconsidered the appeal of an involuntarily committed mental patient in light of <u>Youngberg</u>.  The Court recognized that when examining a claim of unnecessary restraint "[u]nder [<u>Youngberg</u>] there is no necessity for a fact finder to determine that the restraint constituted punishment.  No more need be found than that the restraint was more than a reasonable professional judgment found necessary for safety or treatment." <u>Id.</u> at 638.  Applying this standard to Plaintiff's complaint, it is conceivable that Defendants' delay in effectuating Plaintiff's transfer to the "least restrictive condition necessary," if proven to be done for

5

intentional, punitive, or unreasonable purposes, could provide a basis for relief.  However, Plaintiff has already been transferred from Ann Klein, and now resides in Ancora, and the state court has ordered that under no circumstances shall Plaintiff be permitted to return to Greystone.

C.     <u>Sovereign Immunity</u>

Defendants argue that as State employees, being sued in their official capacities, they are not "persons" subject to liability under the meaning of 42 U.S.C. 1983.  (<u>Citing</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 70-71 (1989)).  The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."  As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. <u>See Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. <u>Quern v. Jordan</u>, 440 U.S. 332 (1979).  In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are

persons within the meaning of § 1983.  Will 491 U.S. at 64, 70-71 and n. 10 (1989).

In the present case, the complaint fails to specify whether Defendants are being sued in their official or individual capacities.  If Defendants were being sued in their official capacities, sovereign immunity might apply.  However, as Plaintiff is proceeding pro se, the Court will interpret the complaint liberally as charging defendants in their individual capacities.  Additionally, even if Plaintiff originally intended to sue Defendants in their official capacities, he would be permitted to amend the complaint in order to cure this deficiency.  Defendants sovereign immunity argument is therefore without merit.

D.   Qualified Immunity

Defendants additionally argue that Plaintiff's claims should be dismissed because he has failed to demonstrate that a clearly established constitutional right of his was violated.  In support of their motion, Defendants argue that the state court's July 18, 2005 Order establishes that Plaintiff's committal at Ann Klein was professionally warranted.  It was entered after a hearing at which experts testified and Plaintiff was represented by counsel.  As the committal was the result of sound professional judgment, Defendants argue that it cannot possibly be construed to have infringed Plaintiff's constitutionally protected right to due process.  Although Defendants don't specifically state so in their motion, this is essentially a qualified immunity argument.  The Court will analyze this argument on that basis.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982). The analysis of qualified immunity proceeds in stages. First, the court should assess whether "the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001).[1] If so, then at the second step the court must decide "whether the right was clearly established,"[2] and in particular, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[3] Id. at 201-02.[4] In the present case, the complaint does not pass the first step of the qualified immunity analysis.

Plaintiff alleges that Defendants deprived him of his right to due process by failing to effectuate his transfer back to Greystone. However, the state court's July 18, 2005 decision addresses this very same issue. The state court, in making its decision, weighed the facts, including the level of treatment Plaintiff required, and specifically ordered that Plaintiff "**shall**

---

[1] See also Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir.1998) ("In addressing the qualified immunity question, we first ask whether the plaintiffs have 'asserted a violation of a constitutional right at all.' Siegert v. Gilley, 500 U.S. 226, 232 . . . (1991).").

[2] In Davis v. Scherer, 468 U.S. 183, 194 (1984), the fact that the defendant's conduct violated a clearly established *state-law* right did not defeat qualified immunity regarding the violation of federal law.

[3] "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Unlawfulness can be apparent "even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002); compare Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) (emphasizing the need for attention to context in judging whether application of a general principle was clear under the circumstances). "[T]he salient question . . . is whether the state of the law [at the time of the conduct] gave respondents fair warning that their [conduct] was unconstitutional." Hope, 536 U.S. at 741; see also Groh v. Ramirez, 540 U.S. 551, 564 (2004) ("No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional.").

[4] See also Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998).

**NOT, under any circumstances, be transferred to Greystone."** The Court left open the possibility that Plaintiff could be transferred to a more or less restrictive environment in the future, should his treatment needs so require.[5]

Plaintiff does not have a constitutionally guaranteed right to be in a hospital of his own choosing, or to be transferred to Greystone in violation of the state court's order stating otherwise. Assuming Plaintiff is seeking to assert a right to be confined in the least restrictive conditions, that right cannot be found to be clearly established in the circumstances of this case. Therefore, as a matter of law, Defendants would be entitled to qualified immunity. Plaintiff's complaint fails to state a claim upon which relief can be granted and will be dismissed on that basis.[6]

## *CONCLUSION*

In light of the foregoing considerations, Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted will be GRANTED.

---

[5] Apparently, cause for a transfer arose thereafter because Plaintiff was transferred to Ancora prior to September 29, 2005.

[6] There is a serious question whether, under the doctrine of Younger abstention, the Court should proceed to hear Plaintiff's claims. Younger v. Harris, 401 U.S. 37 (1971). There is "a strong federal policy against court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Commission v. Garden State Bar Assoc., 457 U.S. 423, 431 (1982). There is a three-part test for determining whether Younger abstention is appropriate: i) there is a pending state judicial proceeding; ii) the proceeding implicates important state interests; and iii) the state proceeding affords an adequate opportunity to raise constitutional challenges. At least at the time Plaintiff filed his complaint, all three of these criteria had been met.

                                                                                                 /s/ Dickinson R. Debevoise
                                                                                                 Dickinson R. Debevoise, U.S.S.D.J.

Dated: May 22nd, 2006